**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Edward Johnson,<br><br>    Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>    Respondents. | No. CV-18-02864-PHX-SHR (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Robert Edward Johnson filed a pro se amended Petition for a Writ of Habeas Corpus ("PWHC") pursuant to 28 U.S.C. § 2254 on September 24, 2018 raising one ground for relief. (Doc. 5).[1,2] Petitioner alleges that the trial court abused its discretion when it failed to review part of Petitioner's psychological report and that the report was incomplete. Petitioner contends that had the court considered the full report and Petitioner's PTSD, it would have supported a reduced mitigated sentence under *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015). Respondents filed an Answer contending that the PWHC is untimely, and further that Petitioner's claim is procedurally defaulted without excuse. (Doc. 16). Petitioner did not file a reply.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for a Report and Recommendation. The

---

[1] Petitioner filed his original PWHC on September 6, 2018. (Doc. 1).
[2] Pursuant to the prison mailbox rule, the Court assumes that Petitioner deposited his PWHC in the prison mailing system on the date indicated by Petitioner's signature on his Petition. In order to give Petitioner the benefit of the earliest date calculations, the Court makes this same assumption for all other documents filed by Petitioner and included in the record for the present matter.

undersigned finds that Petitioner's PWHC is untimely and that Petitioner has not shown that he is entitled to statutory or equitable tolling. Accordingly, the Magistrate Judge recommends that the District Court deny the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plea and Sentencing

The presentence investigation report summarized the background of Petitioner's case as follows:[3]

> On April 29, 2010, Avondale Police responded to a call of a family fight at a residence being shared by the defendant, his wife (Gemma Johnson) and their two minor children. Upon arriving on scene, officers discovered that both the defendant and his wife had multiple stab wounds to their bodies. Ms. Johnson was lying on the floor at the top of a stairwell in a puddle of blood. She told the responding officers, "please help me", and "I've been stabbed." The defendant was located in the master bedroom lying on a bed. He was also covered in blood. A knife covered in blood was also found in the master bedroom lying on the ground. After securing the scene, police contacted the Goodyear Fire Department, who responded, and rendered aid to both individuals. The defendant and Ms. Johnson were both transported via ambulance to St. Joseph's Hospital for further medical care and treatment. Once she arrived at the hospital, it was discovered Ms. Johnson had suffered an estimated thirty puncture wounds and lacerations to her abdomen, arms and chest area. The defendant had an estimated twenty–thirty puncture wounds and lacerations in the area of his abdomen and chest. Both the defendant and Ms. Johnson required surgery as a result of their wounds.
>
> While the defendant and Ms. Johnson were at the hospital, officers proceeded to interview both of their sons (ages fourteen and sixteen, respectively), who were present when the incident occurred. Both of them reported hearing their mother and father fighting at approximately three o'clock in the morning. One of the two children (the youngest) observed the defendant lying on top of Ms. Johnson while they were both on a bed in the master bedroom. Ms. Johnson was yelling for him to call the police. While this was occurring, he observed the defendant's hand moving up and down and heard the impact of hitting, but did not see a knife. He went to his bedroom, grabbed a sword and returned to his parent's room. He put the sword to the defendant's face, and told him to get off his mother. At this point, the defendant attempted to grab the

---
[3] The factual basis for a guilty plea "may be ascertained from the record including pre-sentence reports, preliminary hearing reports, admissions of the defendant, and from other sources." *State v. Varela*, 587 P.2d 1173, 1175 (Ariz. 1978).

> sword, and this caused his son to walk backward. The defendant's son walked out of the bedroom, and the defendant closed the door on him. While this was taking place, the defendant's other son contacted 911 to report the assault. Police arrived on scene shortly thereafter.
>
> After Ms. Johnson underwent surgery, officers were able to interview her at the hospital in regard to the events which had taken place. She stated she had returned home late at night from a meeting with friends. The defendant began yelling at her, and asking her where she had been. He accused her of having an affair. She told him she wanted out of their marriage, at which point the defendant informed her he was not going to allow her to leave him. He then took a knife and started stabbing her. He also told her, "no one is going to have you." Ms. Johnson informed police she believed she was going to die when the defendant was stabbing her.

(Doc. 16 Ex. G at 97–98).[4]

On May 11, 2010 a Maricopa County grand jury indicted Petitioner on the following charges: count one, kidnapping; count two, attempt to commit second degree murder; and count three, aggravated assault. (Ex. A). On March 22, 2011, Petitioner pled guilty to count two, a class 2 dangerous felony, and amended count three, attempted aggravated assault, a class 3 felony and a dangerous crime against children. (Exs. D & E). Count two carried a presumptive sentence of 10.5 years, a 7-year minimum sentence, and a 21 year maximum sentence, and probation was not available; count three carried a presumptive sentence of 10 years, a 5-year minimum sentence, and a 15 year maximum sentence, and probation was available. (Ex. D.) Pursuant to the terms of the plea agreement, the parties agreed that Petitioner would be sentenced to a term of 15–21 years on count two followed by lifetime probation with domestic violence terms on count three.

On May 9, 2011 Petitioner was sentenced to an aggravated term of 17.5 years on count two followed by lifetime supervised probation on count three. (Ex. K at 158). The court noted that it had reviewed the PSR, the stipulations of the parties in the plea agreement, the county attorney's recommendation, defense counsel's sentencing memorandum, letters of support on behalf of Petitioner, and a mitigation report. *Id.* at 135.

---

[4] All exhibit numbers refer to the exhibits attached to Respondents' Answer. (Doc. 16). Page numbers refer to the page of the document as filed in CM/ECF.

The court also noted that it had only received the first three pages of a psychological report and that the report was not complete. *Id.* Petitioner's counsel stated that the pages the court received were sufficient because there was no real diagnosis and they had used the report primarily to determine whether a defense of guilty except insane might be warranted. *Id.* at 135–136. Petitioner also addressed the court and asked the court to consider as mitigating factors his history of suicide attempts, bipolar disorder, and depression, and that he was not on his medication at the time of the incident. *Id.* at 150. After considering all of the aggravating circumstances and mitigating circumstances, the court determined that an aggravated term was appropriate. *Id.* at 156.

**B. First Petition for Post-Conviction Relief**[5, 6]

On June 24, 2011[7] Petitioner initiated proceedings in Maricopa County Superior Court for Rule 32 post-conviction relief ("PCR"), alleging ineffective assistance of counsel ("IAC"). (Ex. M). On November 14, 2011 Petitioner's appointed counsel filed a notice pursuant to Ariz. R. Crim. P. 32.4(c)(2) informing the court of her review of the record and stating that she found no colorable claims for relief. (Ex. O). Counsel also requested that Petitioner be permitted to file a supplemental pro se petition. When Petitioner failed to

---

[5] The Arizona Rules of Criminal Procedure were amended effective January 20, 2020. New Rule 32 applies to defendants convicted after a trial or a contested probation violation hearing, and new Rule 33 applies to pleading defendants and defendants who admitted a probation violation or had an automatic probation violation. Because Petitioner's state court actions were filed prior to January 20, 2020 and he had no state court action pending at the time the new rules went into effect, former Rule 32 applies to Petitioner's case and the Court will cite to former Rule 32 throughout this opinion. *See* Arizona Supreme Court Order R-19-0012, available at:
https://www.azcourts.gov/rules/Recent-Amendments/Rules-of-Criminal-Procedure

[6] Because Petitioner pled guilty, he could not file a direct appeal and could only challenge his conviction and sentence through a Rule 32 petition. *See* A.R.S. § 13-4033(B) ("In noncapital cases a defendant may not appeal from a judgment or sentence that is entered pursuant to a plea agreement or an admission to a probation violation."); Ariz. R. Crim. P. 32.1 ("Any person who pled guilty or no contest, admitted a probation violation, or whose probation was automatically violated based upon a plea of guilty or no contest shall have the right to file a post-conviction relief proceeding, and this proceeding shall be known as a Rule 32 of-right proceeding."); *Summers v. Schriro*, 481 F.3d 710, 711 (9th Cir. 2007) (holding that an "'of right proceeding,' available under Arizona Rule of Criminal Procedure 32 to criminal defendants who plead guilty, is a form of 'direct review' within the meaning of 28 U.S.C. 2244(d)(1)(A).").

[7] Petitioner signed the PCR notice on June 18, 2011 and then signed the affidavit of indigency statement before a notary on June 24, 2011. In either case, Petitioner's PCR notice was timely filed.

timely file his petition, the trial court dismissed the PCR notice on April 26, 2012. (Ex. P). Petitioner then filed a motion to reinstate and continue his PCR proceedings, which the court granted on August 21, 2012. (Ex. Q).

On September 24, 2012 Petitioner timely filed his pro per petition. (Ex. R). Petitioner's memorandum did not present a distinct claim for relief, but rather summarized his history of child abuse, mental illness, financial and marriage difficulties, and mental health treatment and good behavior in prison. Petitioner stated that his trial counsel hired a doctor to do a two-part mental health evaluation, but the second part was never completed. *Id.* at 201. Petitioner alleged that he should have received a full psychological evaluation and that his attorney pressured him to take the plea. *Id.* at 207–208. The State filed a Response (Ex. S) and Petitioner filed a Reply (Ex. T).

On April 22, 2013 the trial court issued its order dismissing Petitioner's PCR petition. (Ex. U). The court noted that the "essence of his petition seems to be that he has now changed his mind and, in hindsight, should not have accepted the plea offer but exercised his right to a trial." *Id.* at 224. The court first rejected Petitioner's contention that he should have received a full psychological report, stating that although it was unclear whether Petitioner was challenging his Rule 11 examination or his right to pursue a guilty except insane defense, Petitioner waived this right when he entered his plea, and the record showed Petitioner made a knowing, intelligent, and voluntary decision to waive his constitutional rights and enter the plea agreement. As to Petitioner's claim that his attorney used threats and pressured him to sign the plea, the court found that Petitioner's contentions did not amount to involuntariness under the law, especially where Petitioner had rejected the plea after the second settlement conference, and considering the record from the change of plea hearing. Finally, the court rejected Petitioner's claim of IAC, noting that it was wholly unsupported and that Petitioner failed to provide any evidence to substantiate his allegation. The court therefore concluded that Petitioner had failed to establish a colorable claim for relief. *Id.* at 255.

Petitioner did not file a petition for review with the Arizona Court of Appeals.

### C. Second Petition for Post-Conviction Relief

On October 31, 2013 Petitioner filed a second petition for PCR in Maricopa County Superior Court. (Ex. V). Petitioner alleged that he was denied his constitutional right to effective assistance of counsel at every critical stage of the proceeding and that the sentence imposed was not in accordance with rule and statute. *Id.* at 228. Petitioner stated that there was new case law on plea bargaining and negotiation that could have an impact on his case, citing *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). *Id.* at 229. Petitioner further stated that he was given too much time as a first-time offender, that there were no aggravating circumstances to support the sentence he received, and that he wanted the lifetime probation dropped. *Id.* at 230.

On December 6, 2013 the trial court issued its order dismissing the second petition for PCR, finding that it was both successive and untimely. (Ex. W). The court specifically found that Petitioner could not raise his claims of IAC pursuant to Rule 32.1(a) and illegal sentence pursuant to Rule 32.1(c) in an untimely or successive proceeding because, pursuant to Rule 32.4(a), an untimely notice may only raise claims pursuant to Rule 32.1 (d), (e), (f), (g), or (h). *Id.* at 232. The court further found that these claims were required to be raised in the first Rule 32 proceeding and were therefore precluded by Rule 32.2(a)(2). *Id.* at 233. The court also rejected Petitioner's argument under Rule 32.1(g) that *Lafler v. Cooper* was a significant change in the law because it merely applied the law on IAC to a specific factual context. The court concluded that Petitioner failed to state a claim for relief that could be granted in an untimely or successive proceeding, citing Rule 32.4(a).

### D. Third Petition for Post-Conviction Relief

On April 10, 2014 Petitioner filed his third notice of PCR in Maricopa County Superior Court alleging that, pursuant to Rule 32.1(g), there was a significant change in the law that would probably overturn his conviction or sentence. (Ex. X at 237). Petitioner alleged that, pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), counsel on his first Rule 32 proceeding "was ineffective in failing to raise a claim that Petitioner was denied effective assistance at the penalty phase when trial counsel failed to present in coherent

fashion evidence regarding his mental state at the time of the offense." *Id.*

On May 8, 2014 the trial court issued its order dismissing the third notice of PCR, finding that Petitioner failed to state a claim for relief which could be granted in an untimely proceeding. (Ex. Y at 241) (citing Rule 32.4(a)). The court rejected Petitioner's argument under Rule 32.1(g), finding that *Martinez's* holding applied to federal habeas corpus actions but did not provide relief at the state level. *Id.* at 240–241. The court further stated that there was no constitutional right to effective assistance of counsel in state PCR proceedings and therefore such a claim could not be asserted. *Id.* at 241.

On June 18, 2014 Petitioner filed a notice of appeal and a petition for review in the Arizona COA. (Exs. BB & CC).[8] Petitioner stated that the issue for review was whether a narrow exception in *Martinez v. Ryan* should apply retroactively to a state's initial review collateral proceeding for a claim of ineffective assistance of trial counsel, and if so, whether a state prisoner should be allowed to file the petition for PCR raising a claim of IAC under *Martinez*. (Ex. CC at 250). On June 9, 2016 the COA issued its decision granting review and denying relief. (Ex. DD). The court noted that ineffective assistance of prior PCR counsel is generally not a valid, substantive claim under Rule 32. *Id.* at 255. However, if the initial PCR proceeding is an of-right proceeding, IAC is a cognizable claim. *Id.* at 256. But, *Martinez* did not affect this right, and Petitioner could have raised this claim earlier under existing case law; therefore, whether *Martinez* constituted a significant change in the law was immaterial. *Id.* (citing Ariz. R. Crim. P. 32.4(a) and *State v. Lopez*, 234 Ariz. 513, 515 ¶ 8 (App. 2014) (post-conviction relief claim time-barred, regardless of degree of constitutional magnitude, because it was not timely presented)).

Petitioner did not file a petition for review in the Arizona Supreme Court, and on July 25, 2016 the COA issued its mandate. (Ex. DD).

**E. Fourth Petition for Post-Conviction Relief**

On March 31, 2016 Petitioner filed his fourth notice of PCR in Maricopa County

---

[8] The trial court granted Petitioner's motion for an extension of time to file a petition for review. (Exs. Z & AA).

- 7 -

Superior Court. (Ex. EE).[9] Petitioner alleged newly discovered material facts and a significant change in the law, claiming that the trial court abused its discretion when it failed to review the complete psychological report for a mitigated sentence, in violation of *McKinney v. Ryan*, 745 F.3d 963 (9th Cir. 2014). *Id.* at 4. Petitioner also alleged that his trial counsel was ineffective and convinced Petitioner to sign a plea agreement that was harsher than what Petitioner would have agreed to if he was not suffering from a mental illness. *Id.* at 14. Petitioner also claimed that his plea was involuntary because of his mental illness, that he suffered from undiagnosed PTSD and was actually innocent of the charges because of mental illness, and that the trial court abused its discretion when it sentenced him without the benefit of mental illness as a super mitigating factor. *Id.* at 16. Petitioner presented one issue for review with four subpoints: 1) whether the trial court abused its discretion when it failed to read the entire mental evaluation report in support of a mitigated sentence and sentenced Petitioner to a greater than presumptive term; 2) the trial court's failure to give weight to the mental evaluation report as a mitigating circumstance for a reduced sentence was contrary to *McKinney v. Ryan*; 3) the information in the mental evaluation was critical to Petitioner's position that there was a nexus between the crime and his diagnosed mental illness; and 4) Petitioner's constitutional right to due process under the Sixth Amendment was violated because the court's failure to read the entire report denied Petitioner the opportunity to present evidence to prove a nexus. *Id.* at 16–19.

On June 2, 2016 the trial court issued its order dismissing Petitioner's fourth Rule 32 proceedings pursuant to Rule 32.2(b). (Ex. FF). The court first considered Petitioner's claim under Rule 32.1(g) and found that even if *McKinney* did constitute a significant change in the law, it was a capital case and was irrelevant here because the trial court did consider and give weight to Petitioner's mental health evidence as a mitigating factor; therefore, nothing in *McKinney* would have changed Petitioner's sentence and he was not entitled to relief under Rule 32.1(g). *Id.* at 29. As to Petitioner's claim under Rule 32.1(e), the court found that although a claim under Rule 32.1(e) is not necessarily precluded under

---

[9] Petitioner also filed a petition on April 1, 2016, and a supporting memorandum on March 31, 2016.

- 8 -

Rule 32.2(a), when raised "it must set forth the substance of the specific exception and the reasons for not raising the claim . . . in a timely manner." *Id.* (quoting Rule 32.2(b)). The court found that Petitioner, the trial court, and counsel were all aware of Petitioner's mental health issues and related evidence, and therefore Petitioner could not satisfy the Rule 32.1(e) standard. *Id.* at 30. The court further stated that "[t]he only 'new' evidence is the labeling of some of [Petitioner's] symptoms as PTSD," and that the trial court was aware of potential sources of this condition, including Petitioner's military service and childhood abuse. And, the court had received evidence of Petitioner's mental state in the Rule 11 reports. Thus, Petitioner failed to show why the allegedly newly discovered facts could not have been discovered and presented earlier in a timely proceeding, and also failed to explain how this additional evidence would have made a difference at sentencing. Finally, as to the Rule 32.1(h) claim, Petitioner failed to meet the standard for a claim of actual innocence. *Id.* The court concluded that Petitioner failed to meet his burden under Rule 32.2(b) requiring an untimely notice to assert substantive claims supported by specific facts and therefore dismissed the petition. *Id.* at 31.

On June 30, 2016 Petitioner filed a notice of appeal and petition for review in the Arizona COA. (Ex. GG). Petitioner alleged that the trial court erred in dismissing his petition based on newly discovered material facts because Petitioner could not have discovered that the trial court had sentenced him pursuant to only a 3-page portion of the psychological report, which was critical to mitigation for a reduced sentence. *Id.* at 36. Petitioner further alleged that he could not have discovered *McKinney's* application to his case as a material change in the law until the decision was issued in 2014. *Id.* at 37. Petitioner stated that the trial court's failure to review the entire psychological report was a fundamental miscarriage of justice because the court did not give full weight to his bipolar diagnosis and PTSD as a mitigating factor for a reduced sentence of 10 years instead of the 17.5 years Petitioner received. *Id.* at 38.

On September 21, 2017 the COA issued its decision granting review and denying relief. (Ex. HH). The court first found that Petitioner did not state a colorable claim under

Rule 32.1(e) because a partial psychological report was submitted at sentencing along with other evidence documenting Petitioner's mental health, and the Rule 32 court noted it had previously reviewed this evidence at sentencing and Petitioner's labeling some of his previous symptoms as PTSD was not new evidence. *Id.* at 73. The court also found that Petitioner was not entitled to relief under *McKinney* because it was not a significant change in the law under Rule 32.1(g) because it was a capital case that merely applied previous decisions and was therefore neither new nor relevant. *Id.* at 73–74. The court concluded that Petitioner's claims were really for an abuse of discretion regarding his sentence and were therefore untimely because they could have been raised in prior proceedings. *Id.* at 74 (citing Ariz. R. Crim. P. 32.4(a)). And, because the claims arose under Rule 32.1(c), illegal sentence, they were properly precluded by Rule 32.2(a)–(b).

On September 28, 2017 Petitioner filed a petition for review to the Arizona Supreme Court, which the court denied on February 14, 2018. (Exs. II & JJ).

On March 20, 2018 the COA issued its mandate. (Ex. HH).

**F. Habeas Petition**

Petitioner filed his amended PWHC on September 24, 2018 stating one ground for relief. (Doc. 5). Petitioner alleges that the trial court abused its discretion when it failed to review the complete psychological report, which would have supported a reduced mitigated sentence under *McKinney* because there was a nexus between the crime and Petitioner's PTSD.[10] Petitioner requests that the Court resentence him to a presumptive term of 10.5 years.

Respondents contend that the PWHC is untimely and that Petitioner has not argued or shown that he is entitled to equitable tolling. (Doc. 16). Respondents further allege that even if the petition were timely, Petitioner's claim is expressly procedurally defaulted

---

[10] The undersigned notes that the amended PWHC, on its face, does not allege that Petitioner is being held in violation of the Constitution, laws, or treaties of the United States, as is required for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). However, construing Petitioner's pleading liberally, Petitioner bases his claim for relief in part on the Ninth Circuit's decision in *McKinney v. Ryan*, which applied the United States Supreme Court case of *Eddings v. Oklahoma*, 455 U.S. 104 (1982), holding that a sentencer may not refuse to consider, as a matter of law, any relevant mitigating evidence.

- 10 -

without excuse.

For the reasons stated below, the undersigned finds that the PWHC is untimely and thus not properly before this Court for review. Accordingly, the undersigned recommends that the District Court deny and dismiss the Petition with prejudice.

## II. STATUTE OF LIMITATIONS

### A. Timeliness

As a threshold matter, the Court must consider whether Petitioner's PWHC is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244. The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). The one-year limitations period is tolled while a "properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).

The other subsections being inapplicable here, Petitioner must have filed his habeas

- 11 -

petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1929 (2013). By pleading guilty, Petitioner waived his right to a direct appeal under Arizona law. However, he retained his right to seek review in an "of-right" PCR proceeding pursuant to Arizona Rules of Criminal Procedure 32, 32.1, and 32.4. Thus, his conviction became final upon "the conclusion of the Rule 32 of-right proceeding and review of that proceeding." *Summers*, 481 F.3d at 711.

Petitioner was sentenced on May 9, 2011 and had 90 days from that date to file a notice of PCR. *See Summers*, 481 F.3d at 715 ("To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review.") (citing Ariz. R. Crim. P. 32.4(a)). The notice for PCR was timely filed on June 24, 2011. The trial court denied Petitioner's of-right petition for PCR on April 22, 2013. Petitioner had 35 days to file a petition for review with the Arizona COA, but he failed to do so. *See* Ariz. R. Crim. P. 32.9(c) (requiring a petition for review that challenges the final decision in a PCR proceeding be filed with the Arizona COA within 30 days); *State v. Savage*, 573 P.2d 1388, 1389 (Ariz. 1978) (holding Ariz. R. Crim. P. 1.3 allows 5 additional days for mailing); *Gelleh v. Shinn*, 2020 WL 3130418, at *3 (D. Ariz. May 14, 2020) (noting that "[t]he Arizona Supreme Court and Arizona Court of Appeals have broadly applied Ariz. R. Crim. P. 1.3. to extend the time to seek appellate review of trial court decisions."), *report and recommendation adopted sub nom. Gelleh v. Shinn*, 2020 WL 3129428 (D. Ariz. June 12, 2020). Therefore, Petitioner's judgment became final on May 27, 2013 within the meaning of 28 U.S.C. § 2244(d)(1)(A) when his time for seeking appellate review expired. *See Gonzalez v. Thaler*, 132 S. Ct. 641 (2012) (holding that where a state prisoner does not seek review in a state's highest court, the judgment becomes "final" for purposes of § 2244(d)(1)(A) on the date that the time for seeking such review expires). Thus, absent any tolling, the one-year limitations period

would have commenced the following day on May 28, 2013 and continued to run until it expired one year later on May 28, 2014—over four years before the instant § 2254 petition was filed. *See Patterson v. Stewart*, 251 F.3d 1243, 1245–47 (9th Cir. 2001) (the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Accordingly, the petition is untimely unless the statute of limitations was tolled. As discussed below, it was not.

### B. Statutory Tolling

The one-year limitation period under AEDPA is statutorily tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002). An application for state PCR is "'*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" including "the time limits upon its delivery . . ." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). If a state court rejects a petitioner's PCR petition as untimely, it cannot be "properly filed" and the petitioner is not entitled to statutory tolling. *Allen v. Sibert*, 552 U.S. 3, 6–7 (2007) ("Whether a time limit is jurisdictional, an affirmative defense, or something in between, it is a 'condition to filing[.]'"); *Pace v. DiGuglielmo*, 544 U.S. 408, 417–418 (2005) (holding that "time limits, no matter their form, are 'filing' conditions").

If a petitioner files an application after the generally applicable state time limit, the application may nonetheless be considered "properly filed" if it fits within any exception to that limit. *Pace*, 544 U.S. at 413. However, the existence of exceptions to the state's timely filing requirements does not prevent a late application from being deemed improperly filed when the application does not fit within any exceptions to the time limit. *Id.* at 408. As the Supreme Court held in *Pace*, "[w]hen a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* at 414 (internal brackets and quotation marks omitted). In so holding, the Court reasoned that:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no

>more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id.* at 413. Under the Arizona PCR statute and corresponding procedural rule, a "proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred." Ariz. R. Crim. P. 32.4; *see also* Ariz. Rev. Stat. § 13–4234(A) (a PCR "proceeding is commenced by timely filing a notice of post conviction relief with the clerk of the court in which the conviction occurred"). Thus, the time limit for filing a notice of PCR under Rule 32.4(a) "places a limit on how long a prisoner can wait before filing a postconviction petition." *Allen*, 552 U.S. at 6.

In the instant case, Petitioner's second PCR petition was untimely filed. Petitioner filed his second PCR petition on October 31, 2013—six months after the trial court issued its order dismissing Petitioner's of-right PCR petition, and plainly beyond the 30-day time limit set forth in Ariz. R. Crim. P. 32.4(a).[11] Furthermore, the trial court specifically found that Petitioner's second PCR petition was successive and untimely, and, pursuant to Rule 32.4(a), failed to state a claim for relief that could be granted in an untimely or successive proceeding. (Ex. W). As Petitioner's second notice of PCR was filed untimely under Arizona law, that is the end of the Court's inquiry as to whether the PCR petition was "properly filed" under AEDPA. *See Pace*, 544 U.S. at 414 ("When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."); *Trigueros v. Adams*, 658 F.3d 983, 988 (9th Cir. 2011) ("An untimely state

---

[11] *See* former Ariz. R. Crim. P. 32.4(a) (2013) ("In a Rule 32 of-right proceeding, the notice must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the final order or mandate by the appellate court in the petitioner's first petition for post-conviction relief proceeding."); *see also* new Rule 33.4(b)(3)(C) (2020) ("A defendant may raise a claim of ineffective assistance of Rule 33 counsel in a successive Rule 33 proceeding if the defendant files a notice no later than 30 days after the trial court's final order in the first post-conviction proceeding, or, if the defendant seeks appellate review of that order, no later than 30 days after the appellate court issues its mandate in that proceeding.").

- 14 -

petition is not 'properly filed' and does not trigger statutory tolling under AEDPA."); *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010) ("An untimely petition . . . is not 'properly filed' pursuant to 28 U.S.C. § 2254(d)(2), and so it does not toll the statute of limitations."). Petitioner's untimely PCR proceedings therefore had no statutory tolling effect on AEDPA's statute of limitations, and the time period during which Petitioner pursued his untimely second PCR petition through the state courts it not subject to statutory tolling. *See De Jesus v. Acevedo*, 567 F.3d 941, 943–44 (7th Cir. 2009) (holding that a "state court's order denying a request for collateral review (whether on the merits or for any procedural reason) does not require the exclusion, under 28 U.S.C. § 2244(d)(2), of time that passed before the state collateral proceeding began").[12]

Even if the state court provides alternative grounds for disposing of a PCR petition, a ruling that the action was untimely precludes it from being "properly filed" and tolling the limitations period. *Carey v. Saffold*, 536 U.S. 214, 225–26 (2002); *Parker v. Ryan*, 2016 WL 11431549, *7 (D. Ariz. June 8, 2016) (same), *report and recommendation adopted*, 2016 WL 4190737 (D. Ariz. Aug. 9, 2016); *Szabo v. Ryan*, 2011 WL 5439006, *8 (D. Ariz. Oct. 24, 2011) ("The state court's interpretation of whether a state petition is untimely

---

[12] "Only the time period during which a round of habeas review is pending tolls the statute of limitation; periods between different rounds of collateral attack are not tolled." *Banjo*, 614 F.3d at 968. The Ninth Circuit "employ[s] a two-part test to determine whether the period between the denial of one petition and the filing of a second petition should be tolled. First, we ask whether the petitioner's subsequent petitions are limited to an elaboration of the facts relating to the claims in the first petition. If the petitions are not related, then the subsequent petition constitutes a new round of collateral attack, and the time between them is not tolled. If the successive petition was attempting to correct deficiencies of a prior petition, however, then the prisoner is still making proper use of state court procedures, and habeas review is still pending. Second, if the successive petition was not timely filed, the period between the petitions is not tolled." *Id.* at 968–69 (internal quotations and citations omitted) (noting that because the court concluded the petition was untimely under the second prong of *King*, the court "need not determine whether the petition was a continuation of the first or the start of a second round."); *see also Hemmerle*, 495 F.3d at 1075 (explaining that when the court construes the new petition as part of the first round of collateral review, tolling applies if the petition was denied on the merits but not if the petition was deemed untimely). If a new claim is asserted in the second petition, then the second petition is considered a "new round," even if the second petition corrects deficiencies in the first petition. *Stancle v. Clay*, 692 F.3d 948, 955–56 (9th Cir. 2012) (finding that because the petitioner "did not limit his second petition to an elaboration of the facts and his second petition started a 'new round,' he is not entitled to statutory gap tolling for the [] days between his first and second superior court petitions."). Here, because the undersigned finds that Petitioner's second PCR petition was untimely, Petitioner is not entitled to tolling for the periods between the first petition and the second petition.

governs whether a post-conviction process has become final for purposes of AEDPA . . . ."), *aff'd*, 571 F. App'x 585 (9th Cir. 2014). Here, the trial court specifically found that Petitioner's second PCR proceeding was both successive and untimely. (Ex. W). Thus, the court's additional findings that Petitioner's claims were precluded and that *Lafler v. Cooper* was not a significant change in the law that applied to Petitioner's case have no effect on whether the second PCR petition was "properly filed" under AEDPA for purposes of statutory tolling. *See Pace*, 544 U.S. at 414; *Carey*, 536 U.S. at 225–26; *see also Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016) (for purposes of applying the "properly filed" requirement of § 2244(d), the federal courts look to the "last reasoned decision" of the state courts).

Furthermore, Petitioner's third and fourth PCR filings had no effect on the statute of limitations. While a petitioner is entitled to statutory tolling during the time that he is seeking "one full round" of collateral review in state court, *Carey*, 536 U.S. at 220–222, untimely successive PCR petitions do not toll the limitations period. *See* 28 U.S.C. § 2244(d)(2); Ariz. R. Crim. P. 32.1(d)–(h), 32.4(a) (successive PCR proceeding is limited to certain claims); *Artuz*, 531 U.S. at 8. Where, as here, each of the subsequent PCR notices were untimely and not exempt from the preclusion rules, the notices were not properly filed, and Petitioner is not entitled to statutory tolling for the time that his third and fourth PCR proceedings were pending.[13] *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (state petition filed after the expiration of AEDPA's one-year period does not reinstate limitations period that ended before state petition was filed). "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (internal brackets and quotation marks omitted).

---

[13] In dismissing Petitioner's third PCR notice, the trial court found that Petitioner failed to state a claim for relief that could be granted in an untimely proceeding. (Ex. Y). On review, the COA agreed, finding that Petitioner's claim of ineffective assistance of PCR counsel could have been presented earlier and was therefore time-barred because it was not timely presented. (Ex. DD). Similarly, in dismissing Petitioner's fourth PCR proceeding, the trial court found that Petitioner failed to meet his burden under Rule 32.2(b) to explain why his claims should not be precluded as untimely for failing to raise them earlier. (Ex. FF). On review, the COA found that the trial court did not abuse its discretion when it sentenced Petitioner, and that his fourth PCR petition "couched in 'significant change in the law' and 'newly discovered evidence' terms, [wa]s untimely and therefore precluded." (Ex. HH).

Statutory tolling is therefore unavailable to render the PWHC petition timely.

In sum, the undersigned finds that Petitioner is not entitled to statutory tolling. Petitioner's conviction became final within the meaning of AEDPA on May 27, 2013, and the statute of limitations began to run the next day. It continued to run uninterrupted until it expired one year later on May 28, 2014. Petitioner's second, third, and fourth untimely PCR proceedings did not toll, pause, or re-start the statute of limitations; once the federal statute of limitations has run, a collateral state action cannot revive it. *See Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("A state court filing after the federal habeas filing deadline does not revive it."); *Ferguson*, 321 F.3d at 823 ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); *Leacock v. Ryan*, 2016 WL 8255617, at *4 (D. Ariz. Nov. 16, 2016) ("Once the one-year AEDPA time limit has passed, a habeas petitioner cannot restart his federal time limit by filing an action in state court . . . There can be no tolling following the expiration of the limitation period because 'there is no period remaining to be tolled.'" (quoting *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000))). Accordingly, absent equitable tolling, the statute of limitations expired on May 28, 2014, making the instant § 2254 petition untimely.

## C. Equitable Tolling

In certain limited circumstances, AEDPA's one-year filing deadline may be equitably tolled. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling if he can demonstrate "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" to prevent him from timely filing a petition. *Id.* at 2562 (quoting *Pace*, 544 U.S. at 418). An extraordinary circumstance is one that is "beyond a prisoner's control [that] make[s] it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (citations omitted). And, to justify equitable tolling, the extra ordinary circumstance must be attributable to "external forces [] rather than a petitioner's lack of diligence[.]" *Id.* Further, a petitioner must establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *See Bryant v. Arizona Attorney General*, 499 F.3d

1056, 1060 (9th Cir. 2007). "'[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

Here, Petitioner has wholly failed to meet his burden. Petitioner did not answer the timeliness question on the PWHC form and did not argue equitable tolling in his petition. Nor did Petitioner file a reply to Respondents' answer. The record before the Court is devoid of any evidence to demonstrate that Petitioner is entitled to equitable tolling, and Petitioner has not adequately shown why he is without fault for failing to timely file his second PCR notice. Petitioner's pro se status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *See*, *e.g.*, *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) ("A petitioner's misunderstanding of accurate information cannot merit relief, as equitable tolling requires a petitioner to show that some extraordinary circumstance[ ] beyond [his] control caused his late petition, and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone."); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To apply the doctrine in extraordinary circumstances necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances stood in his way suggests that an external force must cause the untimeliness, rather than . . . merely oversight, miscalculation or negligence on the petitioner's part . . . .") (internal quotation marks and brackets omitted)). Simply stated, Petitioner cannot demonstrate any extraordinary circumstances that prevented him from timely filing the petition.

Accordingly, the undersigned finds that Petitioner is not entitled to equitable tolling and the PWHC is untimely.

### III. RECOMMENDATION

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be DENIED because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-18-2864-PHX-SHR**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 17th day of August, 2020.

Eric J. Markovich
United States Magistrate Judge